UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 11

OLGA'S KITCHEN, INC.,                           Case No. 15-49008

    Debtor.
_____/

CORRECTED

**AMENDED ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, (B) APPROVING CERTAIN BIDDER PROTECTIONS, AND (C) SCHEDULING A FINAL SALE <u>HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREFORE</u>**

This matter having come before this Court on the Motion for Entry of (I) an Order (the "<u>Sale Procedures Order</u>") (A) Approving Bidding Procedures for the Sale of Assets (the "<u>Bidding Procedures</u>"), (B) Approving Certain Bidder Protections (the "<u>Bidder Protections</u>"), and (C) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof; and (II) an Order (the "<u>Sale Approval Order</u>") (A) Authorizing the Sale of Substantially All Debtor's Assets Free and Clear of All Claims, Liens, and Encumbrances (the "<u>Sale</u>"), (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection Therewith, and (C) Granting Related Relief (the "<u>Sale Motion</u>") dated October 15, 2015,[1] filed by Olga's Kitchen, Inc. (the "<u>Debtor</u>"), as debtor in possession, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "<u>Bankruptcy Code</u>"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, as amended (the "<u>Bankruptcy Rules</u>"); and the Debtor having determined

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Sale Motion.

that approving the Bidding Procedures, authorizing the Bidder Protections, and granting the other relief requested in the Sale Motion will induce competitive bidding for the subject assets and will maximize the value of the Debtor's estate; and this Court having reviewed and considered (a) the Sale Motion and the exhibits thereto; (b) arguments of counsel in support of the entry of the Sale Procedures Order; and (c) the opposition thereto, if any, at a hearing for such purpose (the "<u>Sale Procedures Hearing</u>"); upon the Stipulation of the parties in support of entry of this Order, and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that notice of the Sale Motion has been given as set forth in the Sale Motion and that no other or further notice need be given; and upon the record of the Sale Procedures Hearing; and after due deliberation thereon; and good cause appearing therefore, it is hereby,

**FOUND AND DETERMINED THAT:**[2]

A. This Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. § 1334 and § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(A), (N), and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The Debtor has shown good and sufficient cause for approving (i) the Bidding Procedures; (ii) the Bidder Protections; (iii) the form and manner of the Notice of Sale; (iv) the form and manner of notice of the Assignment Notice; and, in connection therewith, (v) the procedures described below for the determination of the amounts necessary to cure defaults under the Debtor Contracts (the "**Cure Costs**") and to address any other disputes in connection

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

with the assumption and assignment of the Debtor Contracts pursuant to section 365 of the Bankruptcy Code.

C. The Debtors have shown good and sufficient cause for scheduling the Sale Hearing.

D. The Bidder Protections are beneficial to the Debtor's estate because they will ensure a competitive and efficient bidding process, they were necessary to induce the Purchaser[3] to set forth its stalking horse bid for the Acquired Assets, they are necessary to prevent the Purchaser from withdrawing its offer, and they will enhance the Debtor's ability to maximize the value of its assets for the benefit of its creditors. The terms and conditions of the Bidder Protections are fair and reasonable and are the product of extended good faith, arm's-length negotiations between the Debtor and the Purchaser.

E. Under the circumstances, and particularly in light of the extensive prior marketing of the Acquired Assets, the Bidding Procedures constitute a reasonable, sufficient, adequate, and proper means to provide potential competing bidders with an opportunity to submit and pursue higher and better offers for the Acquired Assets.

F. Time is of the essence with respect to the entry of this Sale Procedures Order.

G. The Sale Motion and this Sale Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Sale Motion is GRANTED to the extent set forth herein.

---

[3] Purchaser shall mean SOK Venture LLC.

2. The Bidding Procedures set forth in this Sale Procedures Order and attached as Exhibit 6.B to the Sale Motion shall be utilized in connection with (i) marketing, negotiating and consummating the Sale of the Acquired Assets and (ii) the assumption and assignment to the Purchaser by the Debtor of certain Debtor Contracts.

**Bidding Procedures**

3. The Bidding Procedures, as set forth on Exhibit 6.B to the Sale Motion (incorporated herein by reference as if fully set forth in this Sale Procedures Order), are hereby approved and shall govern all proceedings relating to the Sale of the Acquired Assets, the Purchase Agreement, and any subsequent bids for the Acquired Assets in these chapter 11 cases.

4. The failure specifically to include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

5. Any person wishing to submit a higher or better offer for the Acquired Assets, or any portion thereof, must do so in accordance with the terms of the Bidding Procedures.

6. No other party submitting any other offer to purchase the Acquired Assets (or a portion thereof) or having made a Qualified Bid of any nature: (a) may request as part of any such offer any expense reimbursement, break-up fee, or termination payment or any other similar fee or payment in connection with the Sale process contemplated by the Bidding Procedures; or (b) shall be entitled to any of the foregoing payments by reason of having tendered any such offer to purchase the Acquired Assets (or a portion thereof).

7. In order to participate at the Auction, a Potential Bidder must submit its bid, in a form acceptable to the Debtors and in strict compliance with the terms set forth in the Bidding

Procedures (with copies to certain professionals as explained in the Bidding Procedures) on or before **4:00 p.m. (Eastern Time) on November 16, 2015** (the "**Bid Deadline**").

8. A summary of the Bidding Procedures is as follows:[4]

i. In order to participate in the Auction, any other Potential Bidder must, on or before November 16, 2015 at 4:00 p.m. (Eastern Time), deliver (unless previously delivered) to: (i) the Company's Chief Restructuring Officer, Gene Kohut, 17000 Kercheval Ave., Suite 210, Grosse Pointe, MI 48230, gene@gktrustee.com; (ii) the Company's counsel, Robert Bassel, PO Box T, Clinton, MI 49236, bbassel@gmail.com; (iii) the Receiver for OKI, Dalto Consulting, Inc., attn: Kenneth J. Dalto, 32400 Telegraph Road, Suite 102, Bingham Farms, MI 48025, kdalto@kendalto.com; (iv) the Receiver's counsel, Frank & Frank, PLLC, Jerome D. Frank, 30833 Northwestern Hwy., Suite 205, Farmington Hills, MI 48334, jfrank@frankfirm.com; (v) counsel for Citizens Bank, Barris, Sott, Denn & Driker, P.L.L.C., attn: C. David Bargamian, 211 W. Fort Street, 15th Floor, Detroit, MI 48226, dbargamian@bsdd.com (vi) Thomas Lindahl, Co-Counsel for Sysco Detroit, LLC3506 Union Lake Road, Commerce Twp., MI 48382, tlindahl@comcast.net, and (vii) Charles Phoenix, Counsel for Estate of Michael Jordan and 23 Strategies, LLC 2407 Periwinkle Way, Suite 6, Sanibel, FL 33957 cptp@rhodestucker.com, (collectively, the "<u>Notice Parties</u>"), the following:

   a. a good faith, bona fide offer for at least $8,250,000 plus the payment of the Sysco Payment (as defined in the Purchase Agreement) to purchase all of the Acquired Assets, which offer (i) identifies with particularity each and every condition to closing; (ii) is not conditioned on any contingency, including, among others, obtaining any of the following: (A) financing or (B) shareholder, board of directors, or other approval; (iii) remains irrevocable until 7 days after the date of closing of the Successful Bid; (iv) provides that any conditions related to the outcome or completion of a due diligence review by the Potential Bidder are waived if the offer is not withdrawn prior to the Auction, (v) provides Debtor with sufficient and adequate information to demonstrate, to the satisfaction of Debtor, that such Potential Bidder has the financial wherewithal and ability to consummate the acquisition of the Acquired Assets; and (vi) does not entitle the Potential Bidder to any break-up fee, transaction fee, termination fee, expense reimbursement, or any similar type of payment or reimbursement;

---

[4] Notwithstanding the inclusion of this summary of the Bidding Procedures, the specific Bidding Procedures set forth on Exhibit 6.B to the Sale Motion shall govern and control.

b.  a clean and a duly executed purchase and sale agreement, substantially in the form of the Purchase Agreement and including all conditions to closing set forth in Article 6 of the Purchase Agreement, and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Purchase Agreement executed with Purchaser, which may not be materially more burdensome to Seller or otherwise inconsistent with these Bidding Procedures;

c.  written disclosure of the identity of each entity that will be bidding for or purchasing the Acquired Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

d.  written proof by the Potential Bidder of its financial capacity to close the proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which Debtor will determine;

e.  a cash deposit equal to $250,000 by wire transfer of immediately available funds to an account or accounts designated by Debtor (the "Deposit"), which Deposit shall not be subject to any liens in favor or any person or entity; and

f.  a list designating the executory contracts and unexpired leases that the Potential Bidder may request the Company to assume and assign to the Potential Bidder.

g.  The following information, to the extent in the care, custody or control of the Potential Bidder:

   1.  The proposed tenant that will be the assignee:

   2.  the proposed name/business under which assignee intends to operate the premises;

   3.  the assignee's intended use;

   4.  Assignee's audited financial statements and annual reports for the last three years;

> 5. Balance sheets and cash flow projections prepared in contemplation of purchasing the Debtor's assets, including the lease;
>
> 6. A contact or representative of the proposed assignee to whom the objecting landlord may communicate with regard to questions concerning the materials provided for adequate assurance; and
>
> 7. evidence of the ability of the assignee and its principals to guarantee the assignee's performance. [Upon receipt, Debtor shall forward the information received as to subparagraph (g) to all landlords who have provided Debtor with their email addresses, or the email addresses of their counsel]

ii. Bids fulfilling all of the preceding requirements, in the Debtor's discretion, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders" who are eligible to participate in the Auction. The Purchase Agreement is deemed to be a Qualified Bid, and the Purchaser is deemed to be a Qualified Bidder and may participate in the Auction without the need to take any further steps or comply with any other provisions of these Bidding Procedures. By no later than November 17, 2015, Debtor will determine, in its discretion after consultation with its advisors, and the Notice Parties, which other Potential Bidders are Qualified Bidders, and will notify the Potential Bidders, and the Purchaser of all Qualified Bids so as to enable such Potential Bidders to bid at the Auction. Any bid that is not deemed a Qualified Bid will not be considered by Debtor.

iii. In consultation with the Notice Parties, Debtor will evaluate Qualified Bids before the Auction, and identify the Qualified Bid that is, in the Debtor's judgment, the highest or otherwise best bid ("Baseline Bid"). Debtor will announce the Baseline Bid and notify the Qualified Bidders and the Purchaser of the Baseline Bid, and distribute copies of the Baseline Bid to each Qualified Bidder who has submitted a Qualified Bid, including Purchaser, by no later than November 17, 2015.

iv. Those Potential Bidders whose bids were not deemed a Qualified Bid may file an objection with the Court no later than November 18, 2015 as to why it believes that it submitted a Qualified Bid, and the Court shall hear these objections on November 19, 2015 at 11:00 a.m.

v. If no Qualified Bids are received by the Bid Deadline, the Purchaser will be deemed the Successful Bidder (defined below) and the Purchase Agreement the Successful Bid, and, Debtor may immediately pursue entry of an order by the Court approving the Purchase Agreement and authorizing the sale of the Acquired Assets to Purchaser.

vi. Debtor will conduct an Auction of the Acquired Assets. The Auction will commence on November 20, 2015 at the offices of Barris, Sott, Denn & Driker, P.L.L.C., 211 W. Fort Street, 15th Floor, Detroit, MI 48226 at 9:00.a.m., or at a later time or different place as Seller may notify the Purchaser and all other Qualified Bidders.

vii. The Auction will be conducted in accordance with the following procedures ("Auction Procedures"):

    a. the Auction will be conducted openly;

    b. only the Qualified Bidders, including the Purchaser, will be entitled to bid at the Auction;

    c. the Qualified Bidders, including the Purchaser, may appear in person or through duly-authorized representatives at the Auction;

    d. only authorized representatives of each of the Qualified Bidders, the Purchaser, Seller, and all other Notice Parties are permitted to attend the Auction;

    e. bidding at the Auction will begin at the Baseline Bid;

    f. bids at the Auction must be made in minimum increments of $100,000, provided that any bid submitted by Purchaser shall be deemed to include the full amount of the Termination Fee potentially payable;

    g. each Qualified Bidder will be informed of the terms of the previous bids;

    h. the bidding may be transcribed to ensure an accurate recording of the bidding at the Auction;

    i. each Qualified Bidder will be deemed to have confirmed, by participating in the Auction, that it has not engaged in any collusion with respect to the bidding or the sale;

    j. absent irregularities in the conduct of the Auction, the Court will not consider bids made after the Auction is closed; and

    k. the Auction will be governed by other Auction Procedures as may be announced by Debtor, from time to time; provided, that any such other Auction Procedures will not be inconsistent with any order of the Court.

viii. Upon the conclusion of the Auction, Debtor, in its discretion, in the exercise of its reasonable, good-faith business judgment will identify the highest or otherwise best bid ("Successful Bid"). The Qualified Bidder having submitted the Successful Bid will be deemed the "Successful Bidder." The Successful

> Bidder and Seller will, on the date of the Auction, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid was made and shall close as soon as commercially reasonable and practicable after the entry of the Sale Order, and in any event no later than December 11, 2015.

ix. Debtor will be deemed to have accepted a Qualified Bid only when (a) the bid is declared the Successful Bid at the Auction and (b) definitive documentation has been executed with respect to the Successful Bid. Acceptance is conditioned upon approval by the Court of the Successful Bid and entry of the Sale Order approving such Successful Bid. The bid of the Qualified Bidder with the second-highest bid ("Back-Up Bidder") is required to remain irrevocable until the earlier of (i) such time as the sale of the Acquired Assets is consummated between Seller and the Successful Bidder and (ii) December 11, 2015. In the event the sale of the Acquired Assets is not closed with the Successful Bidder, the Back-Up Bidder is obligated to close the sale of the Acquired Assets at the price bid by the Back-Up Bidder.

x. The Deposit of the Successful Bidder will, upon consummation of the purchase of the Acquired Assets, be credited to the purchase price paid for the Acquired Assets. If the Successful Bidder fails to consummate the purchase of the Acquired Assets, then the Deposit will be forfeited and retained irrevocably by the Seller in accordance with the Purchase Agreement. The Deposit of any unsuccessful Qualified Bidders will be returned within 2 business days after the Auction. The Deposit of the Back-Up Bidder will be returned within 2 business days of the closing of the sale to the Successful Bidder.

**Bidder Protections**

9. The Bidder Protections described in the Purchase Agreement and the Sale Motion are hereby approved and shall be enforceable in accordance with the terms of the Purchase Agreement and the Sale Motion. Recognizing the value and benefits that the Purchaser has provided to the estate by entering into the Purchase Agreement, as well as Purchaser's expenditure of time, energy, and resources, the Termination Fee is approved in the amount of $150,000, with such fee payable in accordance with the terms of the Purchase Agreement and the Sale Motion. The Debtor is authorized to pay the Termination Fee, subject to the terms and conditions set forth in the Purchase Agreement and Sale Motion, provided that in no event will the Termination Fee be paid in the absence of entry of an order approving the Sale of the

Acquired Assets to a Successful Bidder other than Purchaser. The Debtor's obligations in respect of the Termination Fee shall survive termination of the Purchase Agreement and, until paid, shall constitute an administrative expense of the Debtor's estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code, and shall be paid in accordance with the terms of the Purchase Agreement and Sale Motion without further order of this Court.

### Sale Hearing

10. The Sale Hearing to consider approval of the Sale to the Purchaser (or the Successful Bidder, as the case may be) will take place on **November 23, 2015 at 3:30 p.m. (Eastern Time)** in the courtroom of the Honorable Walter Shapero, Theodore Levin Courthouse, 10th Floor, Courtroom 1042, 231 West Lafayette Street, Detroit, MI 48226. Objections to the entry of the Sale Approval Order and the related relief requested in the Sale Motion must be made in writing and must be filed with the Court prior to the commencement of the Sale Hearing. The failure of any objecting party to timely file and serve its objection shall be a bar to the assertion by such party at the Sale Hearing or thereafter of any objection to the Sale Motion, the Sale of the Acquired Assets, or the Debtor's consummation and performance of the Purchase Agreement.

11. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open Court or on this Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

### Assumption and Assignment Procedures

12. The following procedures shall govern the assumption and assignment of Debtor Contracts in connection with any Sale:

(a) The Debtor, within two (2) days after entry of this Sale Procedures Order, shall serve on each of the non-debtor counterparties to the relevant Debtor Contracts (each a "Counterparty") a notice substantially in the form attached to the Sale Motion as Exhibit 6.C (the "Assignment Notice") specifying the cure amounts necessary to assume each of the Debtor Contracts (the "Cure Cost") and the Debtor's intention to assume and assign such agreements to the Purchaser or its designee.[5] Purchaser shall have the right until the date provided in the Purchase Agreement to amend the Debtor Contracts schedule to include additional executory contracts and unexpired leases or to exclude executory contracts or unexpired leases previously included as provided in the Purchase Agreement.

(b) Objections, if any, to the proposed Cure Costs, or to the proposed assumption and assignment of the Debtor Contracts, including, but not limited to, objections relating to adequate assurance of future performance or objections relating to whether applicable law excuses the Counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code, must be in writing and filed with this Court and served on the Notice Parties (as defined hereinafter) so as to be received no later than as follows: (1) as to objections to the proposed Cure Costs, by 5 p.m. of the date prior to the Auction; (2) as to any other objections, 5 p.m. of the date prior to the Sale Hearing (the "Designation and Cure Objection Deadline").

---

[5] Although the Debtor is authorized to assume and assign to Purchaser the Debtor Contracts listed on the Assignment Notice, the Purchaser may remove any Debtor Contracts from the Assignment Notice at any time prior to the closing of the Sale, and upon such removal such Debtor Contract will no longer be included in the Debtor Contracts assumed by Debtor and assigned to Purchaser pursuant to the Sale Approval Order and the Purchase Agreement. Debtor will file a final list of Debtor Contracts that are assumed by the Debtor and assigned to the Purchaser within 1 business day after the closing of the Sale.

(c) Where a Counterparty files an objection meeting the requirements set forth herein, objecting to the assumption by the Debtor and assignment to the Purchaser of such Debtor Contract (the "<u>Disputed Designation</u>") and/or asserting a cure amount higher than the proposed Cure Costs listed on the Assignment Notice (the "<u>Disputed Cure Costs</u>"), the Debtor, the Purchaser (or the Successful Bidder, as the case may be), and the Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention. In all cases, the Purchaser reserves the right to direct the Debtor to withdraw a Debtor Contract from the Assignment Notice if the Debtor, the Purchaser and the Counterparty are unable to resolve any such objection. If the Debtor, the Counterparty, and the Purchaser (or the Successful Bidder, as the case may be), determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by this Court at a hearing that not less than ten (10) days after the service of such objection, or such other date as determined by this Court including at the Sale Hearing, unless the Debtor, the Purchaser (or the Successful Bidder, as the case may be), and the Counterparty to the Debtor Contract agree otherwise. If this Court determines at this hearing that the Debtor Contract will not be assumed and assigned, then such executory contract shall no longer be considered a Debtor Contract; provided, however, that after such determination is made by this Court, the Debtor may propose a new Cure Cost in accordance with the procedures set forth herein, including providing the applicable Counterparty with the Assignment Notice setting forth the redesignation and proposed new Cure Cost of the Debtor Contract.

(d) Any Counterparty to a Debtor Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Debtor Contract by the Designation and Cure Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Debtor Contract, and such party shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate, or the Purchaser (or the Successful Bidder, as the case may be).

(e) If the Counterparty to a Debtor Contract fails to timely object to the assumption and assignment of a Debtor Contract or the proposed Cure Cost relating thereto by the Designation and Cure Objection Deadline, or upon the resolution of any timely objection by agreement of the parties or order of this Court approving an assumption and assignment, such Debtor Contract shall be deemed to be assumed by the Debtor and assigned to the Purchaser, and the proposed Cure Cost related to such Debtor Contract shall be established and approved in all respects, subject to the conditions set forth directly below.

(f) The Debtor's decision to assume and assign the Debtor Contracts is subject to Court approval and consummation of the Sale. Accordingly, subject to the satisfaction of conditions in connection with the Sale, the Debtor shall be deemed to have assumed and assigned the Debtor Contracts as of the date of and effective only upon the Closing Date (as defined in the Purchase Agreement), and absent such closing, each of the Debtor Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtor under the Bankruptcy Code. Also, inclusion of any document on the list of Debtor Contracts in the Assignment Notice shall not constitute or be deemed to be a determination or admission by the Debtor or the Purchaser (or the Successful

Bidder, as the case may be) that such document is, in fact, an executory contract within the meaning of the Bankruptcy Code, all rights with respect thereto being expressly reserved.

(g) Except as may otherwise be agreed to by the parties to a Debtor Contract, the defaults under the Debtor Contracts that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows: the Debtor shall pay all Cure Costs relating to an assumed executory contract or unexpired lease, including from the purchase price of the Sale, within ten (10) days after the later of (i) the Closing Date or (ii) the date on which such Debtor Contract is deemed assumed and assigned.

**Valuation of SOK Interest in Joint Venture**

13. The Debtor's exercise of its Drag-Along-Right, as described in the Sale Motion, is authorized in connection with the Sale of the Acquired Assets to the Purchaser (or any Successful Bidder, as the case may be). In order to exercise the Drag-Along-Right and effectuate the corresponding sale of the 50% interest of Purchaser in the joint venture known as Olga's SOK Holdings LLC (the "Joint Venture") to any Successful Bidder other than Purchaser, (a) Purchaser will be paid the value of Purchaser's interest in the Joint Venture, consistent with the terms of the Joint Development Agreement between OKI, LLC and Purchaser (the "Joint Development Agreement"), from the gross Sale Proceeds or otherwise and (b) the Successful Bidder must obtain, at or prior to the closing of the Sale, written evidence reasonably satisfactory to Debtor and Purchaser that Successful Bidder has obtained a release from any applicable third parties of all guarantees extended by Purchaser with respect to the Joint Venture (or any of its subsidiaries), including with respect to any real estate lease or obligations for borrowed money (collectively, the "Guarantee Releases").

14. As set forth in further detail below, Purchaser will receive a credit for its interest in the Joint Venture if it is the Successful Bidder. Purchaser will be paid the value of its interest in the Joint Venture if a Qualified Bidder other than Purchaser is the Successful Bidder.

15. Within 3 days after the Sale Hearing, but no later than the Closing Date, Debtor and Purchaser will each provide to the other its valuation of the Purchaser's interest in the Joint Venture in light of the Successful Bid price. If Purchaser and the Debtor do not agree on the valuation, an independent valuation based on the applicable provisions of the Joint Development Agreement ("Independent Valuation"), including Section 10 of the Joint Development Agreement, will be conducted not later than 90 days after the closing of the Sale with the valuation determined as of the date of the Auction. At Closing, there shall be a global reconciliation of the items due Debtor from the Joint Venture, and vice versa, subject to the Bankruptcy Code.

16. If Purchaser is the Successful Bidder, it will receive a credit at the closing of the Sale for the lower of its valuation of Purchaser's interest in the Joint Venture and the Debtor's valuation of Purchaser's interest in the Joint Venture, and Debtor will escrow the difference between the two competing valuations in accordance with the provisions of the Joint Development Agreement. Within 10 days of the completion of the Independent Valuation, the additional value for the Purchaser's interest in the Joint Venture, if any, as determined in connection with the Independent Valuation, will be released from the escrow and paid by the Debtor to Purchaser and the remainder, if any, will be remitted to Debtor.

17. If a Qualified Bidder other than Purchaser is the Successful Bidder, Purchaser will be paid the lower of its valuation of Purchaser's interest in the Joint Venture and the

Debtor's valuation of Purchaser's interest in the Joint Venture at the closing of the Sale and the difference between the two competing valuations will be escrowed in accordance with the provisions of the Joint Development Agreement. Within 10 days of the completion of the Independent Valuation, any additional value for the Purchaser's interest in the Joint Venture as determined in connection with the Independent Valuation will be released from the escrow and paid by the Debtor to Purchaser and the remainder, if any, will be remitted to the Debtor.

18. If a Qualified Bidder other than Purchaser is the Successful Bidder, the Successful Bidder must deliver to the Debtor and Purchaser each of the Guarantee Releases, in form acceptable to Debtor and Purchaser, at or prior to the closing of the Sale.

## Notice

19. The form and manner of notice of (a) the Notice of Sale and (b) the Assumption Notice, in each case as described in the Sale Motion, shall be good and sufficient, and no other or further notice thereof shall be required, if given as follows:

(a) Within two (2) days after entry of this Sale Procedures Order, the Debtor shall serve a copy of the Sale Motion, this Sale Procedures Order, the Bidding Procedures and the Notice of Sale, substantially in the form attached to the Sale Procedures Motion as Exhibit 6.D, by first-class mail, postage prepaid, upon the following parties (collectively, the "Notice Parties"): (i) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets, as evidenced by executing a confidentiality agreement with the Debtor; (ii) any entities known to have asserted any lien or security interest in or upon the Acquired Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) all parties to the Purchase Agreement and all related agreements; (v) the Office of the United States Trustee; (vi) the

Internal Revenue Service; (vii) all entities that have requested notice in accordance with Bankruptcy Rule 2002 and (viii) all entities listed on the Debtor's mailing matrix.

(b) Within two (2) days after entry of this Sale Procedures Order, or as soon thereafter as is practicable, the Debtor shall cause notice substantially in the form of the notice attached to the Sale Procedures Motion as Exhibit 6.E, to be published in the Detroit News, Detroit Free Press and Crain's Detroit Business. This publication notice shall constitute an additional component of the Notice of Sale; and

(c) Within two (2) days after entry of this Sale Procedures Order, the Debtor shall serve the Assignment Notice on each Counterparty in the manner described above.

20. This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Sale Procedures Order.

21. Notwithstanding anything to the contrary herein, Jarbou Canton Real Estate, LLC (Store 154) ("Jarbou")'s rights regarding whether or not the lease with Debtor has been terminated, including the legal effect of the lease termination notice which Jarbou asserts was sent prepetition, are hereby preserved.

22. Entry of this Sale Procedures Order shall not affect the requirement, if any, of the Seller to disclose its experience rating to Purchaser.

23. MUA's objections regarding entry of the Sale Order are preserved, pending a resolution of its objections at the Sale Hearing.

24. The Sale Proceeds shall be held in an account at Citizens Bank pursuant to the requirements of the entered Cash Collateral Order, as it may be amended, and shall not be disbursed absent Court Order.

25. This Sale Procedures Order and the Bidding Procedures shall not be deemed to release any claims, to the extent they exist and are valid and not subject to defenses, from being asserted against Debtor, Purchaser, or the Successful Bidder by any landlord arising out of accrued and unbilled charges arising out of its lease, and the ability of all landlords to assert post-closing adjustments are preserved, as are any defenses thereto, and shall not be prejudiced by entry of this Sales Procedures Order or the Bidding Procedures. Moreover, objections by landlords related to indemnity obligations arising out of an unexpired lease of nonresidential real property, to the extent they exist and are valid and not subject to defenses, are preserved, are not waived and may be brought by a landlord as an objection to any proposed Sale Order or as part of any cure claim objection; provided, however that any such objections must comply with the procedures and deadlines set forth in this Order. Furthermore, entry of the Sale Procedures Order and the Bidding Procedures does not affect any landlord protections under 11 USC section 365(b)(3).

26. Notwithstanding anything to the contrary in the Purchase Agreement, the amount of the nonrefundable deposit shall be $250,000.

27. Notwithstanding anything to the contrary herein or in the Purchase Agreement, SOK claims, if any, against the Successful Bidder, and after the closing against OKI and the Joint Venture, arising from or related to the Joint Venture Agreements, shall be deemed satisfied through the process set forth in paragraph 15 herein.

28. In the event that Purchaser is not the Successful Bidder, Purchaser waives any claims regarding the timing or procedure regarding the drag-along or tag-along process inconsistent with the Sale Procedures Order.

29. Notwithstanding anything to the contrary in the Purchase Agreement, the Kobacker Liabilities shall be Excluded Liabilities, and not assumed by the Successful Bidder absent them assuming contractual obligations relating thereto.

30. Notwithstanding anything to the contrary in the Purchase Agreement, any Proceeding commenced by SOK shall be excluded from Article 6 of the Purchase Agreement.

31. Notwithstanding anything to the contrary in the Purchase Agreement, the amount of the Break Up Fee shall be $150,000, and the amount of the initial bid under the Bid Procedures shall be $8,250,000.

.

**Signed on November 12, 2015**

                                         **/s/ Walter Shapero**
                             **Walter Shapero**
                             **United States Bankruptcy Judge**