**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:                                                  Chapter 11

OLGA'S KITCHEN, INC.,                                   Case No. 15-49008

        Debtor.                                 Hon. Walter Shapero

_____/

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

This matter having coming before the Court on the Motion for Entry of (I) an Order (A) Approving Bidding Procedures for the Sale of Assets, (B) Approving Certain Bidder Protections, and (C) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Authorizing the Sale of Substantially All Debtor's Assets Free and Clear of All Claims, Liens, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection Therewith, and (C) Granting Related Relief (Docket No. 277) (the "Sale Motion") dated October 16, 2015,[1] filed by Olga's Kitchen, Inc. (the "Debtor"), as debtor in possession, seeking, among other things, pursuant to Sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, as amended (the "Bankruptcy Rules"), the entry of an order (the "Sale Approval Order"): (i) authorizing and approving the Asset Purchase Agreement dated as of November 20, 2015 (including all exhibits, schedules and ancillary agreements related thereto, the "Agreement"), substantially in the form attached hereto as Exhibit 1, by and among Debtor, OKI, Inc. ("OKI") and Kobacker & Associates of Kentwood and Kobacker & Associates ("Kobacker" and together with Debtor and OKI, collectively, "Seller") and SOK Venture LLC

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Sale Motion.

("Purchaser"), pursuant to which Seller has agreed to sell substantially all of its assets including the Debtor Contracts (as defined below) (collectively, the "Assets") to the Purchaser (collectively, the "Sale Transaction"); (ii) authorizing and approving the sale by the Seller of the Assets, free and clear of all liens, claims, encumbrances and interests (other than certain liabilities that will be assumed by the Purchaser, as set forth in the Agreement (the "Assumed Liabilities")); (iii) authorizing the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases of the Debtors in connection with the Sale Transaction (collectively, the "Debtor Contracts") identified on Exhibit 2 attached hereto;[2] and (iv) granting other related relief; the Court having conducted a hearing on the Sale Motion on November 23, 2015 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; the Court having reviewed and considered (i) the Sale Motion and the exhibits thereto, (ii) the Agreement attached hereto as Exhibit 1, (iii) this Court's Amended Order (A) Approving Bidding Procedures For The Sale of Assets and The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, (B) Approving Certain Bidder Protections, and (c) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Therefore (Docket No. 363), dated November 12, 2015 (the "Sale Procedures Order") approving competitive bidding procedures for the Assets (the "Bidding Procedures"), (iv) all objections to the Sale Transaction filed in accordance with the Sale Procedures Order and (v) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motion, the Sale Procedures Order and the auction conducted in accordance with the Bidding Procedures on November 20, 2015 (the "Auction") has been provided in accordance with the Sale Procedures Order, and that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate and creditor and other parties in interest; and upon the record of the Sale Hearing and these cases; and after due deliberation thereon; and good cause appearing therefore,

---

[2] Although the Debtor is authorized to assume and assign to Purchaser the Debtor Contracts listed on Exhibit 2, the Purchaser may remove any Debtor Contracts from Exhibit 2 at any time prior to the closing of the Sale Transaction, and upon such removal such Debtor Contract will no longer be included in the Debtor Contracts assumed by Debtor and assigned to Purchaser pursuant to this Order and the Agreement. Debtor will file a final list of Debtor Contracts that are assumed by the Debtor and assigned to the Purchaser within 1 business day after the closing of the Sale Transaction.

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

### JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES

A. This Court has jurisdiction over the Sale Motion, the transactions contemplated by the Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. This Sale Approval Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Approval Order, and expressly directs entry of judgment as set forth herein.

C. The statutory predicates for the relief sought in the Sale Motion are Sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### SOUND BUSINESS PURPOSE

D. The Seller seeks to convey the Assets, all of which are related to Seller's business of owning and operating Olga's branded restaurants, including through Olga's SOK Holdings, LLC (the "Joint Venture"), a joint venture owned 50% by OKI and 50% by SOK Venture LLC and operated by the Debtor (collectively, the "Business").

E. The Seller has demonstrated, and the Agreement reflects, both (1) good, sufficient, and sound business purposes and justifications for the Sale Transaction, and (2) compelling circumstances for the Sale Transaction outside of the ordinary course of the Debtor's business pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, the value of the Assets and the Business would be harmed by any delay of the Sale Transaction. Time is of the essence in consummating the proposed Sale Transaction.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

F. The consummation of the Sale Transaction outside of a plan of reorganization or plan of liquidation pursuant to the Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization of the Debtor. The Sale Transaction does not constitute a *sub rosa* plan of reorganization.

G. The Agreement was not entered into, and neither the Seller nor the Purchaser has entered into the Agreement or proposes to consummate the Sale Transaction, for the purpose of hindering, delaying or defrauding the Seller's creditors. Neither the Seller nor the Purchaser has entered into the Agreement or proposes to consummate the Sale Transaction fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

### HIGHEST AND BEST OFFERS

H. The Seller actively marketed the sale of substantially all of its assets both before and after the Petition Date and engaged in discussions with a variety of advisors and consultants in an effort to maximize the value of the Assets. The Seller and its advisors undertook exhaustive efforts to solicit interest from third parties with the potential to acquire all or a substantial portion of the Assets.

I. On November 12, 2015, this Court entered the Sale Procedures Order approving Bidding Procedures for the Assets. The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Assets. Additionally, the Seller conducted the Auction in accordance with the Sale Procedures Order and complied with that order in all respects. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner. The Purchaser participated in the Auction and complied with the Sale Procedures Order and the Bidding Procedures.

J. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, (1) the Debtors have adequately marketed the Assets; (2) the purchase price contained in the Agreement constitutes the highest and otherwise best offer for

the Assets and provides fair and reasonable consideration for the Assets; (3) the Sale Transaction will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative including, without limitation, liquidation under Chapter 7 or Chapter 11 of the Bankruptcy Code; (4) the Sale Transaction under Section 363 of the Bankruptcy Code is preferable to a sale under a plan of reorganization or plan of liquidation due to, among other things, the Debtor's deteriorating financial conditional and value and lack of available financing to support ongoing operations; (5) no other party has offered to purchase the Assets for greater economic value to the Debtor or its estate; and (6) the Agreement and the consideration to be paid by the Purchaser under the Agreement constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia. The Debtor's determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment.

**BEST INTEREST OF CREDITORS**

K.  Approval of the Agreement and the consummation of the Sale Transaction to the Purchaser at this time are in the best interest of the Debtor, its creditors, its estate and other parties in interest.

**GOOD FAITH**

L.  The Purchaser is not an "insider" of the Debtor, as that term is defined by Section 101(31) of the Bankruptcy Code.

M.  The Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Sellers and the Purchaser in good faith, without collusion and from arm's-length bargaining positions. The Purchaser has proceeded in good faith in all respects in connection with this proceeding, is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Seller nor the Purchaser have engaged in any conduct that would

cause or permit the Agreement to be avoided; that would tend to hinder or delay creditors; or impose costs and damages under Section 363(n) of the Bankruptcy Code.

### Notice Of The Sale Motion, The Auction And The Cure Amounts

N.       As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate and sufficient notice of the Sale Motion and the Sale Hearing has been provided by the Debtor, (2) such notice was good, sufficient and appropriate under the particular circumstances and (3) no other or further notice of the Sale Motion, the proposed Sale Transaction, the Bidding Procedures, the Auction or the Sale Hearing is or will be required.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:

1. all parties listed on the matrix in Debtor's bankruptcy case;

2. counsel to Purchaser;

3. any party who, in the past year, expressed in writing to the Seller an interest in the Assets;

4. nondebtor parties to the Debtor's executory contracts and unexpired leases listed on Exhibit 1 and Exhibit 2 to the Agreement;

5. all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Assets;

6. the Internal Revenue Service;

7. the Michigan Department of Revenue; and

8. the United States Trustee.

Additionally, the Debtors published notice of the Sale Transaction in the Detroit News, Detroit Free Press and Crain's Detroit Business.  With regard to (1) parties who have claims against the Debtor but whose identities are not reasonably ascertainable by the Debtor, and (2) all other

persons or entities, and the Court finds that such publication notice was sufficient and reasonably calculated under the circumstances to reach such parties, persons and entities.

O.    In accordance with the provisions of the Sale Procedures Order, the Debtor has served notice of its intent to assume and assign the Debtor Contracts and of the related proposed Cure Costs (the "Contract and Cure Schedule") upon each nondebtor counterparty to the Debtor Contracts. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the Debtor Contracts listed in the Contract and Cure Schedule and the assumption and assignment of the Debtor Contracts. All nondebtor parties to the Debtor Contracts have had an opportunity to object to both the Cure Costs listed in the Contract and Cure Schedule and the assumption and assignment of the Debtor Contracts (including objections related to adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty to each Debtor Contract from accepting performance by, or rendering performance to, the Purchaser for purposes of Section 365(c)(1) of the Bankruptcy Code).

### SECTION 363(F) REQUIREMENTS MET FOR FREE AND CLEAR SALES

P.    The Debtor may sell the Assets free and clear of all liens, claims, interests and encumbrances of any kind or nature whatsoever ("Claims") (except for any Assumed Liabilities), because, in each case, one or more of the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. The assumption and assignment of each of the Debtor Contracts is also free and clear of all Claims other than the payment of Cure Costs. Those holders of Claims who did not object, or who withdrew their objections, to the Sale Transaction or the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale Transaction, subject to any defenses of the Debtor.

Q.    The Seller is the sole and lawful owner of the Assets and no other person has any ownership right, title or interest therein.

R. All holders of Claims are adequately protected, and the Sale Transaction thus satisfies Section 363(e) of the Bankruptcy Code, by having their Claims, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such Claim holder had prior to the Sale Transaction, subject to any rights, claims and defenses of the Debtor and its estate.

S. The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Assets were not free and clear of all Claims other than Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any such Claims, including, without limitation and as applicable, certain liabilities (collectively, the "Excluded Liabilities") related to the Business that will not be assumed by the Purchaser, as set forth in the Agreement.

T. Except for the Assumed Liabilities, the Sale Transaction will not impose or result in the imposition of any liability or responsibility of the Purchaser or its affiliates, successors or assigns or any of their assets (including the Assets) and the transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or any of their assets (including the Assets) to any liability for any Claims including, without limitation, successor liability or any products liability.

**ASSUMPTION AND ASSIGNMENT OF THE DEBTOR CONTRACTS**

U. The assumption and assignment of the Debtor Contracts are integral to the Agreement, are in the best interests of the Debtor and its estate, and represent the reasonable exercise of the Debtor's sound business judgment.

V. With respect to each of the Debtor Contracts, the Debtor has met all requirements of Section 365(b) of the Bankruptcy Code. Further, the Purchaser has provided all necessary adequate assurance of future performance under the Debtor Contracts in satisfaction of Sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, the Debtor Contracts can be assumed by the Debtor and assigned to the Purchaser, as provided for in the Sale Procedures Order, the Sale Motion and the Agreement.

## VALIDITY OF THE TRANSFER

W. As of the closing of the Sale Transaction (the "Closing"), the transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest of the Seller in and to the Assets, free and clear of (1) all Claims other than Assumed Liabilities and (2) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, claims (as defined in Section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including, but not limited to, any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), obligations, demands, guarantees, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise.

X. The Seller (1) has full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Seller, (2) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, (3) has taken all actions necessary to authorize and approve the Agreement and the consummation by the Seller of the transactions contemplated thereby and (4) no consents or approvals, other than those expressly provided for in the Agreement, are required for the Seller to consummate such transactions.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

## GENERAL PROVISIONS

1. The Sale Motion is granted in full and the Sale Transaction is approved as set forth in this Sale Approval Order.

2. The findings of fact set forth above and conclusions of law stated herein will constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any

finding of fact later will be determined to be a conclusion of law, it will be so deemed, and to the extent any conclusion of law later will be determined to be a finding of fact, it will be so deemed.

3. All objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein.

4. The Sale Procedures Order and all of its terms are reaffirmed, ratified and approved.

### APPROVAL OF THE AGREEMENT

5. The Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

6. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under and comply with the terms of the Agreement and consummate the Sale Transaction, pursuant to and in accordance with the terms and conditions of the Agreement and this Sale Approval Order.

7. The Debtor, as well as its affiliates, officers, employees and agents, are authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, in substantially the same form as the Agreement attached hereto as Exhibit 1, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may be (a) reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Assets, (b) necessary or appropriate to the performance of the obligations contemplated by the Agreement, and (c) as may be reasonably requested by the Purchaser to implement the Agreement and consummate the Sale Transaction in accordance with the terms thereof, all without further order of the Court.

8. The Debtor is hereby authorized to credit, prorate, escrow and pay any amounts, whether at, prior to or after the Closing, in the exercise of its reasonable discretion and consistent with the Agreement, the Sale Procedures Order and this Sale Approval Order.

9. This Sale Approval Order and the Agreement will be binding in all respects upon the Purchaser, the Seller and its affiliates, any trustees appointed in the Debtor's bankruptcy cases (whether under Chapter 7 or Chapter 11 of the Bankruptcy Code), all creditors (both known and unknown) of Debtor, all interested parties and their successors and assigns including, but not limited to, any person or entity asserting a Claim and any non-debtor counterparty to one of the Debtor Contracts.

10. Nothing contained in any Chapter 11 plan confirmed in these Chapter 11 cases, or any order confirming any such Chapter 11 plan will conflict with or derogate from the provisions of the Agreement and this Sale Approval Order, and to the extent of any conflict or derogation between the Agreement and this Sale Approval Order and any such future plans or orders, the terms of the Agreement and this Sale Approval Order will control.

### TRANSFER OF ASSETS AND RELATED RELIEF

11. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Seller is authorized to transfer the Assets in accordance with the terms of the Agreement. The Assets will be transferred to the Purchaser, and upon consummation of the Agreement, such transfer will (a) be valid, legal, binding and effective; (b) vest the Purchaser with all right, title and interest of the Seller in the Assets; and (c) be free and clear of all Claims except for Assumed Liabilities with all liens, Claims, interests and encumbrances to attach to the net proceeds of the Sale Transaction, in the order of their priority and with the same validity, force and effect which they now have against the Assets, subject to any claims and defenses the Debtor may possess with respect thereto.

12. Except as otherwise provided in the Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) except for Assumed Liabilities, arising under or out of, in connection with, or in any way relating to, the Seller, the Assets, the operation of the Business prior to Closing, or the transfer of the Assets to the Purchaser, are, hereby forever barred, estopped and permanently enjoined from asserting such Claims against the Purchaser, its successors or assigns, its property or the Assets. No such persons or entities

11
15-49008-wsd    Doc 402    Filed 11/24/15    Entered 11/24/15 13:40:55    Page 11 of 19

will assert against the Purchaser or their successors in interest any liability, debt, claim or obligation arising from, related to or in connection with the ownership or operation of the Assets prior to the Closing, except for Assumed Liabilities.

13. This Sale Approval Order (a) will be effective as a determination that, as of Closing, all Claims other than Assumed Liabilities relating to the Assets have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and will be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

14. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtor or the Assets will not have delivered to the Seller prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtor or the Assets or otherwise, then only with regard to Assets that are purchased by the Purchaser pursuant to the Agreement and this Sale Approval Order (a) the Debtor and the Purchaser are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered or otherwise recorded, will constitute conclusive evidence of the release of all Claims against the Assets other than the Assumed Liabilities. This Sale Approval Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

15. The Purchaser is hereby authorized to execute and deliver such other documents, statements, instruments and notices which may be necessary or desirable to fully consummate the Agreement and the Sale Transaction.

16. All persons or entities in possession of some or all of the Assets are directed to surrender possession of such assets to the Purchaser or its designee at the time of Closing of the Sale Transaction.

17. Following the Closing of the Sale Transaction, no holder of any lien, claim, interest or encumbrance will interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to any such lien, claim, interest or encumbrance, or based on any actions the Debtor may take in its Chapter 11 cases.

18. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Seller to transfer the Assets to the Purchaser in accordance with the Agreement and this Sale Approval Order.

19. Insofar as continuing to operate the Debtor during the postbankruptcy period has preserved the collateral and maximized the value of the estate, which has benefitted all parties holding secured claims, and as administrative expenses have accrued, and will continue to accrue, all administrative expenses shall have priority over the payment of secured claims pursuant to, inter alia, 11 U.S.C. section 506(c), notwithstanding any prior Order of the Court.

20. To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred and conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale Transaction.

### ASSUMPTION AND ASSIGNMENT OF DEBTOR CONTRACTS

21. Pursuant to Sections 105(a) and 365 of the Bankruptcy Code, the Debtor's assumption and assignment to the Purchaser of the Debtor Contracts listed on <u>Exhibit 2</u>, is hereby approved, and all requirements of Section 365 of the Bankruptcy Code are hereby deemed satisfied.

22. The Debtor is hereby authorized in accordance with Sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Debtor Contracts to the Purchaser free and clear of all Claims, and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Debtor Contracts to the Purchaser.

23. The Debtor Contracts will be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Debtor Contract (including those of the type described in Sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer. There will be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtor as a result of the assumption or assignment of the Debtor Contracts. No Debtor Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Agreement.

24. The Cure Costs under the Debtor Contracts arising or accruing prior to the date of this Sale Approval Order are shown on Exhibit 2, subject to any pending objections to such Cure Costs by the counterparties to Debtor Contracts. Counterparties to Debtor Contracts shall be permitted to amend and update their respective Cure Costs for any accrued but unbilled amounts or other estimated adjustments under the applicable Debtor Contracts related to pre-Closing periods, and any additional allowed amounts shall constitute administrative expense claims in the Debtor's bankruptcy case, subject to any applicable administrative expense bar date. The Debtor will pay all Cure Costs relating to Assumed Contracts and Assumed Leases (as such terms are defined in the Agreement). The Debtor is authorized and directed to pay the Cure Costs in accordance with the terms of this Order and the Agreement.

25. To the extent any Cure Costs have not been resolved by the Debtor and the applicable counterparty, or pursuant to further order of the Court, as of the Closing, the Debtor may escrow the higher of (a) the Cure Costs noticed by the Debtor; or (b) the amount set forth in any timely filed objection to Cure Costs, with such amount as agreed to by the parties or determined by the Court to be paid promptly following such disposition, and the Debtor shall be permitted to assume and assign such Debtor Contracts to Purchaser effective upon the Closing pursuant to the terms of this Sale Approval Order.

26.     Payment of the Cure Costs will be in full and final satisfaction of any and all defaults under the Debtor Contracts, whether monetary or non-monetary.  Each nondebtor party to a Debtor Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtor or the Purchaser, their successors or assigns or the property of any of them, any default based on all known and unknown facts and circumstances existing as of the date of the Sale Hearing regardless of whether such default was raised or asserted prior to or at the Sale Hearing.

27.     The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Debtor Contract will not be a waiver of such terms or conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Debtor Contracts.

28.     Upon the Closing of the Sale Transaction, the Purchaser will be fully and irrevocably vested with all right, title and interest of the Debtor under the Debtor Contracts.

29.     The assignments of each of the Debtor Contracts are made in good faith under Sections 363(b) and (m) of the Bankruptcy Code.

**EXERCISE OF DRAG-ALONG RIGHT AND VALUATION OF SOK INTEREST IN JOINT VENTURE**

30.     The Debtor's exercise of its Drag-Along-Right, as described in the Sale Motion, is authorized in connection with the Sale Transaction on the terms set forth in the Sale Procedures Order and the Agreement.

31.     In order to exercise the Drag-Along-Right and effectuate the corresponding sale of the 50% interest of Purchaser in the Joint Venture, Purchaser will be paid the value of Purchaser's interest in the Joint Venture, consistent with the terms of the Joint Development Agreement between OKI, LLC and Purchaser (the "Joint Development Agreement"), from the gross proceeds of the Sale Transaction or otherwise.

32.     On or before November 30, 2015, Debtor and Purchaser will each provide to the other its valuation of the Purchaser's interest in the Joint Venture in light of the purchase price contained in the Agreement.  If Purchaser and the Debtor do not agree on the valuation, an independent valuation based on the applicable provisions of the Joint Development Agreement (the "Independent Valuation"), including Section 10 of the Joint

15

Development Agreement, will be conducted not later than 90 days after the Closing with the valuation determined as of the date of the Auction. At Closing, there will be a global reconciliation of the items due to the Debtor from the Joint Venture, and due to the Joint Venture from the Debtor, subject to the applicable provisions of the Bankruptcy Code.

33. Purchaser will receive a credit at the Closing for the lower of its valuation of Purchaser's interest in the Joint Venture and the Debtor's valuation of Purchaser's interest in the Joint Venture, and the Debtor will escrow the difference between the two competing valuations in accordance with the provisions of the Joint Development Agreement. Within 10 days of the completion of the Independent Valuation, the additional value for the Purchaser's interest in the Joint Venture, if any, as determined in connection with the Independent Valuation, will be released from the escrow and paid by the Debtor to Purchaser and the remainder, if any, will be remitted to the Debtor.

### ADDITIONAL PROVISIONS

34. Except as expressly set forth in the Agreement, the Purchaser and its successors or assigns will have no liability for any liability, claim (as that term is defined in Section 101(5) of the Bankruptcy Code), damages or other obligation of or against the Debtor related to the Assets by reason of the transfer of the Assets to the Purchaser. The Purchaser, will not be deemed, as a result of any action taken in connection with the purchase of the Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Seller (other than with respect to any obligations arising under the Debtor Contracts from and after the Closing); (b) have, *de facto* or otherwise, merged with or into the Seller; (c) be a mere continuation or substantial continuation of the Seller or the enterprise of the Seller; or (d) have any liability whatsoever, other than the Assumed Liabilities, under any theory of, without limitation, environmental, labor and employment, products or antitrust liability, whether known or unknown at the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

35. Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing any action or proceeding, at law or in equity, against the Purchaser, its affiliates, successors and assigns, or the Assets, with respect to any (a) Claim other than Assumed Liabilities or (b) successor liability of the Purchaser for the Seller.

36. Effective upon the Closing, no default will exist under any of the assumed Debtor Contracts and no non-debtor counterparty to any of the assumed Debtor Contracts will be permitted to declare a default by the Purchaser or otherwise take action against the Purchaser as a result of Debtor's financial condition, bankruptcy, or failure to perform any duty or obligation under any of the assumed Debtor Contracts.

37. This Court will retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Approval Order and the Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects) and to adjudicate disputes related to this Sale Approval Order or the Agreement.

38. No bulk sales law, or similar law of any state or other jurisdiction will apply in any way to the transactions contemplated by the Agreement, the Sale Motion and this Sale Approval Order.

39. The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction will not affect the validity of the Sale Transaction to the Purchaser, unless such authorization is duly stayed pending such appeal.

40. The terms and provisions of the Agreement and this Sale Approval Order will be binding in all respects upon, and will inure to the benefit of, the Debtor, its estate and its creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting claims in the Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms will likewise be binding on such trustee (whether under Chapter 7 or Chapter 11 of the Bankruptcy Code), examiner or receiver and will not be subject to rejection or avoidance by the Debtor, its estate, its creditors, its shareholders or any trustee, examiner or receiver.

41. The failure specifically to include any particular provisions of the Agreement in this Sale Approval Order will not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

42. The Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Agreement.

43. In the event that there is a direct conflict between the terms of this Sale Approval Order and the Agreement, the terms of this Sale Approval Order will control.

44. Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

45. The Debtor shall pay from the proceeds of the Sale Transaction or otherwise all outstanding personal property taxes, including any accrued but unbilled amounts related to pre-Closing periods, to the applicable taxing authorities promptly following the Closing. If such amounts are in dispute, the Debtor shall escrow the amount in dispute with such amount as agreed to by the applicable parties or as determined by the Court to be paid promptly following such disposition or as otherwise set forth in any plan of reorganization or liquidation filed in Debtor's bankruptcy case.

46. Nothing in this Sale Approval Order shall be interpreted to waive or discharge any tax liabilities due or owing pursuant to the Michigan Employment Security Act, including, but not limited to, existing tax liabilities and the ability of the Unemployment Insurance Agency to make determinations pursuant to the Michigan Employment Security Act regarding potential liability for taxes and rating account transfers to Purchaser if determined to be a successor by the Unemployment Insurance Agency.

47. As provided by Bankruptcy Rules 6004(h) and 6006(d), this Sale Approval Order will not be stayed for 14 days after the entry of the Sale Approval Order and will be effective immediately upon entry, and the Seller and the Purchaser are authorized to close the Sale Transaction immediately upon entry of this Sale Approval Order.

**48.** A hearing as to timely filed objections to Cure Costs, and Jarbou Canton Real Estate's objection regarding whether its lease was terminated shall be heard on **November 30, 2015 at 2:00 p.m.**

```
Signed on November 24, 2015
                                    /s/ Walter Shapero
                                 Walter Shapero
                                 United States Bankruptcy Judge
```